IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

U.S. EQUAL EMPLOYMENT OPPORTUNITY )
)
Plaintiff, )
) CIVIL ACTION NO.
v. )
) C O M P L A I N T
MCWHITE'S FUNERAL HOME, INC., )
) **JURY TRIAL DEMAND**
Defendant. )
)
)
)

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful sex-based and retaliatory employment practices, and to provide appropriate relief to Charging Parties Ashlee Monroe, Vancinia Jones, and Khiante Thompson, and a class of former and/or current female employees who were/are adversely affected by such practices. As alleged with greater specificity below, the owner and manager of McWhite's Funeral Home, Inc., Albert McWhite, Sr., and his son, subjected Charging Parties and a class of female employees to a sexually hostile work environment based on their sex, including groping, sexually charged comments, demands for sex, sex in exchange for money, and threats of violence associated with sexual harassment. Further, Charging Parties Khiante Thompson and Vancinia Jones were retaliated against for engaging in protected activity. Moreover, Charging Party Ashlee Monroe was constructively discharged based on her sex.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. Defendant's principal place of business is within the jurisdiction of the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant McWhite's Funeral Home, Inc. ("MFH" or "Defendant"), a Florida corporation, has continuously been doing business in the State of Florida with its principal place of business in Fort Lauderdale, Florida, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Ashlee Monroe ("Monroe"), Vancinia Jones ("Jones"), Khiante Thompson ("Thompson") (collectively, the "Charging Parties") filed charges with the Commission alleging violations of Title VII by Defendant.

7. The Commission issued a Letter of Determination on May 19, 2015 finding reasonable cause to believe that Defendant discriminated against Charging Party Monroe and a class of female employees based on their sex by subjecting them to a sexually hostile work environment and by constructively discharging Charging Party Monroe based on her sex. The Commission issued a Letter of Determination on July 7, 2015, finding reasonable cause to believe that Defendant retaliated against Vancinia Jones for engaging in protected conduct. The Commission issued a Letter of Determination on July 7, 2015 finding reasonable cause to believe that Defendant discriminated against Charging Party Thompson based on her sex by subjecting her to a sexually hostile work environment, terminating her in retaliation for opposing discrimination, and continuing to retaliate against Charging Party Thompson after her employment ended.

8. The Letters of Determination issued on May 19 and July 7, 2015, invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement

acceptable to the Commission.

11. On August 4, 2015, EEOC issued Defendant Notices of Failure of Conciliation as to all Charging Parties.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### *General Facts*

13. McWhite's Funeral Home, Inc. ("MFH" or "Defendant") is a corporation that supplies caskets, headstones, programs, limousine services, vaults and other funeral related services.

14. The owner and manager of MFH is Albert McWhite, Sr. ("McWhite").

15. MFH employs three of McWhite's children: Elizabeth McWhite, Dandrick McWhite, and Albert McWhite II.

16. Roberta McWhite, McWhite's wife and Ashlee Monroe's aunt, is an employee of MFH.

17. MFH's written anti-harassment policy states that employees should report all harassment to McWhite.

18. To become a licensed funeral home director, state regulations require successful completion of a one-year internship under the supervision of a licensed funeral home director ("Internship"), who must provide quarterly reports indicating that the internship was successfully completed for the quarter.

19. Internship opportunities in the funeral home industry are difficult to find.

*Ashlee Monroe*

20. Ashlee Monroe ("Monroe") was an employee of MFH from January 2013 to September 2014.

21. Monroe earned a salary of approximately $500 per week.

22. In additional to her weekly salary, MFH agreed to pay Monroe overtime for more than forty hours worked, and also a flat-rate for assisting with funeral services.

23. Monroe started working at MFH as a paid intern to complete the Internship necessary to earn her license.

24. Monroe was subjected to unwelcomed sexual comments and touching by McWhite and his son, including, but not limited to:

a. McWhite telling Monroe that she should go to a funeral convention with him so she could sleep with him;

b. McWhite talking to Monroe about women he wanted to have sex with;

c. McWhite telling Monroe he took Viagra at work;

d. McWhite telling Monroe that her butt looks big in certain pants;

e. McWhite telling Monroe about his mistress living down the street from him and his wife;

f. McWhite telling Monroe that she looked like a stripper on a flyer he had and showed to all employees, and asking CP if she was a stripper;

g. McWhite showing Monroe pictures on phone of naked women, including one of a naked woman, bent over, showing her butt and vagina, and another of him having an orgy with at least two other women.

h.      After showing Monroe pictures of naked women, McWhite told Monroe he dreamt about Monroe.

i.      On at least two occasions Dandrick McWhite approached Monroe from behind and wrapped his arms around her, touching her breasts.

j.      McWhite touched Monroe on the butt, neck, arms and hips.

25. Monroe witnessed and/or knew about the following:

a.      When a female employee stopped having sex with McWhite, McWhite cut her hours and told her she "would never have shit," while continuing to ask her for sex.

b.      McWhite offered another female employee money for sex and stood in front of her with his hand grabbing his crotch telling her, "what are you going to do for me now?"

c.      Monroe heard McWhite say to another female employee, at least two or three times a week, "let me get some pussy."

26. Monroe heard McWhite say that he would kill anyone that came between him and his business and/or that he would pay someone to hurt people that affected his business.

27. On at least two occasions McWhite put his hands around Monroe's neck and made a chocking motion.  He laughed when she told him to stop.

28. Monroe told Dandrick McWhite not to touch her and he responded by saying she was too "uppity."

29. Monroe told McWhite several times to stop touching her and he responded by laughing and saying she was "acting like a baby."

30. Monroe told McWhite several times that she did not want to see pictures of nude women.

31. Monroe told McWhite several times that she disapproved of sexual comments he made and stories he told about sexual exploits.

32. McWhite withheld wages from Monroe frequently around the end of 2013 and the beginning of 2014 even though her job duties increased in February 2014 after she completed the Internship and earned her license.

33. McWhite was hostile towards Monroe when she demanded payment for hours she worked, calling her a "bitch" to other staff.

34. On or about September 22, 2014, Monroe met with McWhite to demand to be paid for a funeral service she attended in his place. McWhite told her that she would never make enough money as a funeral home director unless she slept with her boss.

35. Because the egregious sexual comments and conduct of McWhite culminated in his demand that she have sex with him in order to be paid the earnings she was due, Monroe was forced to resign.

36. As a result of McWhite's unlawful conduct, Monroe was harmed and suffered damages

*Khiante Thompson*

37. Khiante Thompson ("Thompson") was an employee of MFH as a Funeral Attendant from February 2014 to January 2015.

38. Thompson repeatedly witnessed McWhite make sexual comments about customers' bodies.

39. Thompson repeatedly witnessed McWhite take pictures of female customers' butts.

40. McWhite told Thompson to lift up her dress and when Thompson refused he said that "she was still young" and that he would "give her a couple of mango seasons before getting her."

41. On or about December 2014, McWhite called Thompson early in the morning at home to tell her that her federal probation officer, Gidget Mitchell, had visited the funeral home, that he met with the parole officer, and that he knew the parole officer personally. McWhite said to Thompson, "you better tighten up because this lady gonna send your ass back to jail"; "all you need to know is that I know her and she's ready to send your ass back to jail."

42. On or about December 2014, McWhite asked Thompson to write a letter in connection with the EEOC administrative investigation into Monroe's charge of discrimination against the MFH. McWhite asked that Thompson say in the letter that she had not seen any sexual harassment. Thompson refused to write the letter.

43. In early 2015, shortly after refusing to write a letter in support of McWhite in connection with EEOC administrative investigation into Monroe's charge of discrimination against the MFH, McWhite stopped assigning Thompson work, cutting her hours to zero.

44. Thompson called MFH every Friday to ask if she could work, but was told there was no work. However, there were funerals and other events taking place at which Thompson could have worked as an attendant.

45. By early 2015, MFH had effectively terminated Thompson by cutting her work hours to zero.

46. On or about March 2015, Thompson filed a charge of discrimination with the EEOC against MFH.

47. Shortly after Thompson filed a charge of discrimination with the EEOC, McWhite contacted Thompson's federal probation officer, Gidget Mitchell, for the purpose of harming Thompson in retaliation for her charge of discrimination.

48. A few days after McWhite spoke with federal probation officer, Gidget Mitchell, Thompson was called into a meeting with Mitchell in which Mitchell told Thompson: "What is this I hear about you filing a charge against McWhite,?" and telling her that "filing false charges" could be an offense and that she had "enough problems as it is."

49. Federal probation officer, Gidget Mitchell, also asked Thompson to bring her a copy of the EEOC charge of discrimination she filed against MFH.

50. As a result of McWhite's unlawful conduct, Thompson was harmed and suffered damages

*Vancinia Jones*

51. Jones was hired by MFH as a paid intern in March 2012 to complete her Internship.

52. While working for MFH, Jones was subjected to sexual harassment and forced to resign in October 2012.

53. Jones filed an EEOC charge of discrimination against MFH in December 2012 alleging sex discrimination based on the sexual harassment and constructive discharge and EEOC issued a No Cause determination in April 2014.

54. Due to her constructive discharge, Jones was unable to complete her Internship within the year, as required.

55. Jones requested that the state agency make an exception to its regulations and allow her to complete her Internship at another funeral home.  The state agency allowed her to

complete the Internship at another funeral home, but did not extend the one-year time limit.

56. From the time she left MFH, Jones continuously applied to licensed funeral directors to give her an Internship. She sent applications and/or inquiries to over twenty-five funeral homes.

57. McWhite advised Jones' prospective employers, including but not limited to Richard Kurtz's funeral home, not to hire her.

58. McWhite told another of Jones' prospective employers, "You don't want to hire that bitch, she tried to sue me," and said Jones was "trouble."

59. Unable to secure an Internship, Jones went back to state agency and asked that it extend the one-year time limit for completing Internships, explaining the circumstances under which her internship with MFH ended and providing copies of the first EEOC charge of discrimination. Jones' request was granted after she appealed.

60. As a result of McWhite's unlawful conduct, Jones was harmed and suffered damages.

*Class Members*

61. In addition to the Charging Parties, MFH, through McWhite, subjected a class of female employees who were not members of his family to unwelcome sexual comments and touching since January, 2010, including but not limited to:

a. Telling a female employee to "give him some pussy" almost each day she reported to work;

b. Offering to and/or paying bills and/or debts, or otherwise offering money, in exchange for sex or sex acts;

c. Continuously demanding sex from female employees;

d. Touching the butts and breasts of female employees against their wills;

e. Asking inappropriate questions of female employees, including whether she was wearing a padded bra, about how he could be her boyfriend and pay her bills and whether he could "slap your butt;"

f. Offering gifts and asking "now what will you do for me"; and

g. Holding his crotch and saying "are you sure you don't want to take care of your bills"

62. As a result of McWhite's unlawful conduct, a class of female employees of MFH were harmed and suffered damages

STATEMENT OF CLAIMS

63. Paragraphs 13 through 62 are fully incorporated herein.

64. Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Charging Parties Monroe and Thompson to a sexually hostile work environment.

65. Since at least as early as January 2010, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting a class of female employees to a sexually hostile work environment.

66. Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by constructively discharging Charging Party Monroe because of her sex.

67. Defendant engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by terminating Charging Party Thompson in

retaliation for engaging in protected activity.

68. Defendant engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Charging Party Jones for engaging in protected activity.

69. The effect of the practices complained of in paragraphs 13-62 above has been to affect the terms and conditions of employment for Charging Parties and a class of female employees since January 2010, to deprive them of equal employment opportunities and to otherwise adversely affect their status as a employees because of their sex and/or in an effort to retaliate. The unlawful employment practices complained of in paragraphs 13-62 above were intentional.

70. The unlawful employment practices complained of in paragraphs 13-62 above were done with malice or with reckless indifference to the federally protected rights of Charging Parties and class members.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including but not limited to permitting a sexually hostile work environment, terminating employees based on their sex, and retaliating against employees who engage in statutorily protected activity in the workplace.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, applicants and employees.

C. Order Defendant to make whole Charging Parties Monroe and Thompson, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to make Charging Parties and class members whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above.

E. Order Defendant to make Charging Parties and class members whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Charging Parties and class members punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Date: September 22, 2015

RESPECTFULLY SUBMITTED,

P. DAVID LOPEZ
General Counsel
JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney

KIMBERLY A. McCOY-CRUZ
Supervisory Trial Attorney

S/ BEATRIZ BISCARDI ANDRE
BEATRIZ BISCARDI ANDRE
Trial Attorney
New York Bar No. 4394599
Tel: 305-808-1753
Fax: 305-808-1835
beatriz.andre@eeoc.gov